1   **BOSTWICK & JASSY LLP**
2   GARY L. BOSTWICK, Cal. Bar No. 79000
        gbostwick@bostwickjassy.com
3   JEAN-PAUL JASSY, Cal. Bar No. 205513
4       jpjassy@bostwickjassy.com
     12400 Wilshire Boulevard, Suite 400
5   Los Angeles, California 90025
6   Telephone: 310-979-6059
     Facsimile:   310-314-8401
7
8   Attorneys for Defendants
     MARK BURNETT PRODUCTIONS, INC.,
9   MARK BURNETT, TRUMP
10  PRODUCTIONS, LLC and
     DONALD J. TRUMP
11
12
13              **UNITED STATES DISTRICT COURT**
14              **CENTRAL DISTRICT OF CALIFORNIA**
15
16  NICHOLAS G. CHRISTAKIS,                    Case No.: CV 08-06864 GW (JTLx)

17                        Plaintiff,           **DEFENDANTS' NOTICE OF
                                                MOTION AND MOTION TO
18                                              DISMISS COMPLAINT AND EACH
                   v.                           CLAIM THEREIN; SUPPORTING
19                                              MEMORANDUM OF POINTS AND
                                                AUTHORITIES**
20  MARK BURNETT PRODUCTIONS;
     MARK BURNETT; TRUMP                        Date:    March 16, 2009
21  PRODUCTIONS, LLC; DONALD J.                 Time:    8:30 a.m.
                                                Judge:   Hon. George H. Wu
22  TRUMP,

23                        Defendants.
24
25      TO PLAINTIFF, APPEARING *PRO SE*:
26          PLEASE TAKE NOTICE that on March 16, 2009 at 8:30 a.m., or as soon
27  thereafter as counsel may be heard, in Courtroom 10 of the above-entitled Court, the
28

-1-

1  Honorable George H. Wu, presiding, located at 312 North Spring Street, Los
2  Angeles, California 90012, Defendants Mark Burnett Productions, Inc. ("MBP"),
3  Mark Burnett ("Burnett"), Trump Productions LLC ("Trump Productions") and
4  Donald J. Trump ("Trump") (collectively, "Defendants") will and hereby do move
5  the Court for an order dismissing the Complaint, and each claim for relief contained
6  therein, filed by plaintiff Nicholas G. Christakis ("Christakis" or "Plaintiff") under
7  the Federal Rules of Civil Procedure, Rules 12(b)(6) and 4(m).

8      This Motion is made following a conference of counsel pursuant to Local
9  Rule 7-3, which took place on February 13, 2009.

10     Defendants' Motion is made on the following grounds, which are amplified in
11  the attached Memorandum of Points and Authorities:

12     (1)     Each claim for relief is barred by the applicable statutes of
13             limitations, C.C.P. §§ 337(1), 339(1) and 340(c);

14     (2)     Each claim for relief is barred by the doctrine of *res judicata* or
15             claim preclusion;

16     (3)     Each claim for relief is barred by the doctrine of waiver or
17             release;

18     (4)     Plaintiff states no facts which could support a claim against
19             defendants Trump Productions LLC or Donald J. Trump;

20     (5)     Each claim for relief fails for additional and independent
21             reasons:

22             (a)     The first claim, for defamation, fails because the
23                     purportedly defamatory language is nonactionable
24                     opinion;

25             (b)     The second and third claims, for tortuous interference
26                     with an advantageous relationship and breach of the
27                     covenant of good faith and fair dealing, respectively, fail
28                     because Plaintiff cannot evade the limitations on a

-2-

1  defamation claim by pleading another claim that is based
2  on an allegedly injurious falsehood;

3  (c)  The second claim also fails because plaintiff alleges no
4  independently actionable wrongful act and because there
5  was no reasonable probability of a future economic
6  benefit, and it fails to the extent it is not directed against
7  a third party;

8  (d)  The third claim also fails because the covenant of good
9  faith and fair dealing cannot impose an obligation
10  disclaimed by an underlying contract; and

11  (6)  The Complaint should also be dismissed as to defendants Mark
12  Burnett Productions, Inc. and Mark Burnett because Plaintiff did
13  not serve them with the Summons and Complaint within 120
14  days as required by FRCP 4(m).

15  This Motion is based on this Notice, the attached Memorandum of Points and
16 Authorities, the concurrently-filed Request for Judicial Notice, the Declaration of
17 Justin Morong with Exhibits A-B, the Declaration of Jean-Paul Jassy with Exhibits
18 C-E, on all papers, pleadings, records and files in this case, on all matters of which
19 judicial notice may be taken, and on such other evidence and/or argument as may be
20 presented to the Court at the hearing on this Motion.

21  Defendants respectfully request that the Court dismiss Plaintiff's Complaint,
22 and each claim for relief contained therein, with prejudice and without leave to
23 amend.

24  Dated:  February 19, 2009  BOSTWICK & JASSY LLP

25

26  By _____

27  Jean-Paul Jassy
    Counsel for Defendants

28

-3-

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.............................................................................................. iii

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 1

I. INTRODUCTION ........................................................................................................... 1

II. PERTINENT FACTUAL AND PROCEDURAL BACKGROUND ............................... 2

    A.    Plaintiff Competes For A Spot On "The Apprentice" And Executes
          Multiple Agreements In The Application And Selection Process .......................2

    B.    Plaintiff Sues Defendants In U.S. District Court In Massachusetts....................5

    C.    Plaintiff Files Another Complaint Against Defendants Alleging Three
          Claims Raised And Dismissed In The Earlier Action.........................................6

III. STANDARD FOR FRCP 12(b)(6) MOTIONS TO DISMISS IN CASES
INVOLVING SPEECH-RELATED ACTIVITIES ......................................................... 6

IV. THE COURT SHOULD DISMISS THE COMPLAINT WITH PREJUDICE
PURSUANT TO FRCP 12(b)(6) BECAUSE PLAINTIFF FAILS TO STATE
A CLAIM UPON WHICH RELIEF CAN BE GRANTED .......................................... 8

    A.    On The Face Of The Complaint, Each Claim Is Barred By The
          Applicable Statute of Limitations ......................................................................8

    B.    Each Claim Also Is Barred By The Doctrine Of *Res* Judicata Or Claim
          Preclusion ...........................................................................................................9

    C.    All Of Plaintiff's Claims Have Been Waived ...................................................11

    D.    Plaintiff States No Facts That Could Support A Claim Against The
          Trump Defendants ..............................................................................................12

    E.    Each Claim Fails For Additional And Independent Reasons..............................13

          1. Plaintiff Fails To State A Claim For Defamation Because The
          Purportedly Defamatory Language Is Nonactionable Opinion, Which
          Cannot Support A Defamation Claim ................................................................13

          2. Plaintiff's Second And Third Claims Fail Because Plaintiff Cannot
          Evade The Constitutional Limitations On His Defamation Claim By
          Pleading Another Claim Which Is Based On A Purportedly Injurious
          Falsehood...........................................................................................................18

          3. Plaintiff Fails To State A Claim For Tortious Interference .........................18

          4. Plaintiff's Claim For Breach Of The Covenant Of Good Faith And
          Fair Dealing Must Fail .....................................................................................19

1  V.  THE COURT ALSO SHOULD DISMISS THE COMPLAINT AS TO THE
       BURNETT DEFENDANTS BECAUSE PLAINTIFF HAS NOT SERVED
2      THEM WITH THE SUMMONS AND COMPLAINT ................................................. 21

3  VI. CONCLUSION ............................................................................................................. 21

-ii-

1

## **TABLE OF AUTHORITIES**

2

**Cases**

*Agosta v. Astor*, 120 Cal. App. 4th 596 (2004) ........................................................... 20

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994) ................ 19

*Baugh v. CBS, Inc.*, 828 F.Supp. 745 (N.D. Cal. 1993) ................................................ 7

*Blatty v. New York Times Co.*, 42 Cal.3d 1033 (1986) ............................................... 18

*Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318 (9th Cir. 1992) ............................. 10

*Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113 (C.D. Cal.) ..................... 14, 16

*Communications Telesystems Intern. v. California Public Utility Comm'n*, 196 F.3d
    1011 (9th Cir. 1999) .............................................................................................. 9

*Copp v. Paxton*, 45 Cal. App. 4th 829 (1996) ............................................................ 16

*Daly v. Viacom, Inc.*, 238 F.Supp.2d 1118 (N.D. Cal 2002) ....................................... 7

*Della Penna v. Toyota Motor Sales U.S.A., Inc.*, 11 Cal.4th 376 (1995) ..... 19, 22, 23

*Des Grages v. Crall*, 27 Cal. App. 313 (1915) .......................................................... 13

*Foley v. Interactive Data Corp.*, 47 Cal.3d 654 (1988) ............................................. 20

*Franchise Realty Interstate Corp. v. San Francisco Local Jt. Executive Bd. of
    Culinary Workers*, 542 F.2d 1076 (9th Cir. 1976) ............................................... 13

*Greenbelt Publ. Assn. v. Bresler*, 398 U.S. 6, 90 S. Ct. 1537,
    26 L. Ed. 2d 6 (1970) ........................................................................................... 14

*Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317 (2000) ...................................................... 20

*Hofmann Co. v. E.I. DuPont de Nemours & Co.*, 202 Cal.App.3d 390 (1988) ........ 18

*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 108 S. Ct. 876,
    99 L. Ed. 2d 41 (1988) ............................................................................... 14, 18, 21

*VeriFone Sec. Litig.*, 11 F.3d 865 (9th Cir. 1993) ....................................................... 7

*Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir. 1980) ....................................... 8

*Knoell v. Petrovich*, 76 Cal. App. 4th 164 (1999) ....................................................... 8

-iii-

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003) ................... 19

*Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205 (1991) ................ 8, 9

*Leon v. Family Fitness Ctr. (#107)*, 61 Cal. App. 4th 1227 (1988) ......................... 11

*Lieberman v. Fieger*, 338 F.3d 1076 (9th Cir. 2003) .......................................... 17, 18

*Lundquist v. Reusser*, 7 Cal. 4th 1193 (1994) ............................................................ 13

*McGarry v. University of San Diego*, 154 Cal. App. 4th 97 (2007) ......................... 17

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S. Ct. 2695,

111 L. Ed. 2d 1 (1990) ............................................................................ 14, 15

*Morningstar, Inc. v. Superior Court*, 23 Cal. App. 4th 676 (1994) .......................... 16

*Paralift, Inc. v. Superior Ct.*, 23 Cal. App. 4th 748 (1993) ...................................... 11

*Pegasus Holdings v. Veterinary Centers of America, Inc.*, 38 F.Supp.2d 1158

(C.D. Cal. 1998) ................................................................................................. 6

*Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26 (1998) ..................... 20

*Racine & Laramie v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026 (1992). 20

*Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530 (9th Cir. 1984) .................... 7

*Rosenaur v. Scherer*, 88 Cal. App. 4th 260 (2001) .................................................... 17

*Scott v. Kuhlmann*, 746 F.2d 1377 (9th Cir. 1984) ...................................................... 9

*Shively v. Bozanich*, 31 Cal. 4th 1230 (2003) .............................................................. 8

*Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999) ................................. 7

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F.Supp. 1303

(N.D. Cal. 1997) .............................................................................................. 19

*Smith v. City & County of San Francisco*, 225 Cal. App. 3d 38 (1990) .............. 7, 19

*Standing Committee on Discipline of the U.S. Dist. Ct. for the Central Dist. of Calif.*

*v. Yagman*, 55 F.3d 1430 (9th Cir. 1995) ........................................... 16, 17, 18

*Stewart v. U.S. Bancrop*, 297 F.3d 953 (9th Cir. 2002) ............................................ 10

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 922, 152 L.Ed.2d 1 (2002). 12

-iv-

1  *Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798 (1995) ................................. 20

2  *Underwager v. Channel 9 Australia*, 69 F.3d 361 (9th Cir. 1995) ......... 14, 15, 16, 17

3  *Winter v. DC Comics*, 30 Cal.4th 881 (2003) ............................................................. 7

**Rules**

Federal Rule of Civil Procedure 4(m) ....................................................................... 21

Federal Rule of Civil Procedure 12(b)(6) ................................................ 6, 8, 9, 10, 16

Federal Rules of Civil Procedure 41(b) ..................................................................... 10

Federal Rule of Evidence 201 ..................................................................................... 6

**Statutes**

Calif. Code of Civil Procedure § 337(1) ..................................................................... 8

Calif. Code of Civil Procedure § 339(1) ..................................................................... 8

Calif. Code of Civil Procedure § 340(c) ..................................................................... 8

Calif. Civil Code § 45 ............................................................................................... 13

Calif. Civil Code § 46 ............................................................................................... 13

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.  INTRODUCTION**

3  This is the second time that plaintiff Nicholas G. Christakis has sued
4 Defendants. Plaintiff's first suit was dismissed by a federal court in Massachusetts.
5 Plaintiff's latest claims are no different and no better, and they, too, should be
6 dismissed.

7  In 2003, Plaintiff was an applicant to be a contestant on the popular reality-
8 based competition television show, "The Apprentice". In 2006, three years after
9 Plaintiff was rejected as a contestant for the show, he sued Defendants in United
10 States District Court in Massachusetts, claiming that he was treated unfairly in the
11 application process. The court dismissed Plaintiff's claims, in part because he had
12 signed multiple waivers and releases acknowledging that he had no such claims
13 against Defendants.

14  At least three independent grounds exist to dismiss Plaintiff's new, but
15 substantively similar, incarnation of his claims. First, each of the present claims is
16 barred by the doctrine of *res judicata*. Plaintiff is suing the same Defendants for
17 claims that were raised or could have been raised in the suit that was dismissed by
18 the District Court in Massachusetts. Second, each claim also is barred by the
19 applicable statute of limitations. Plaintiff is suing Defendants for supposedly saying
20 defamatory things about him in August 2003 – earlier than the lengthiest relevant
21 limitations period would permit. Third, the very same conspicuous, unambiguous
22 and detailed waivers and releases referenced by the Massachusetts court bar
23 Plaintiff's claims in this action. For these reasons, as well as other independent
24 reasons set forth below, this Court should dismiss Plaintiff's Complaint, and each
25 claim therein, with prejudice.

26

27

28

-1-

**II.    PERTINENT FACTUAL AND PROCEDURAL BACKGROUND**

**A.    Plaintiff Competes For A Spot On "The Apprentice" And Executes Multiple Agreements In The Application And Selection Process**

This action concerns the popular reality-based competition television show "The Apprentice" (the "Program"). The first cycle of the Program was produced, among others, by Defendants Mark Burnett Productions, Inc. and Mark Burnett (collectively the "Burnett Defendants" or the "Producers"). The Program, which airs on NBC, is a season-long show featuring 16 contestants who complete various tasks assigned by host Donald Trump. Contestants are periodically eliminated by Donald Trump with the now-famous phrase, "You're Fired." At the end of each season of the Program only one contestant remains.

In 2003, Plaintiff Nicholas G. Christakis ("Plaintiff") applied to be a contestant on the Program. *See* Complaint, ¶¶ 8-10. Plaintiff traveled to Los Angeles in August 2003 to participate in the final selection process for the Program. Complaint, ¶¶ 8, 10. Plaintiff was one of 50 applicants chosen to participate in the final selection process, from which 16 contestants would be selected to appear in the Program. *Id.*, ¶¶ 12, 13.

In anticipation of the final selection process, Plaintiff executed a Release and Waiver, Agreement Not to Sue, and Indemnification and Hold Harmless Agreement (the "Waiver"), dated July 31, 2003. Ex. A.   Contemporaneous with the Waiver, Plaintiff executed the Apprentice Applicant Agreement (the "Applicant Agreement"), dated July 31, 2003. Ex. B.

The Applicant Agreement was executed, "in consideration of and as an inducement to Producer further considering me to become a contestant in the Series." Ex. B at 1. The Applicant Agreement incorporates by reference the Waiver and other agreements executed by Plaintiff (collectively the "Agreements") and establishes that these documents are the "entire agreement and understanding between the parties." Ex. B, ¶ 56.

-2-

1       The Agreements unambiguously reinforce the reasonable, everyday
2 understanding of a reality-based competition television show application; an
3 application does not guarantee selection, and selection as a contestant does not
4 guarantee success. For example, the Applicant Agreement provides that, "Producer
5 is not obligated to select me, even if I meet all eligibility requirements and all
6 criteria for selection." Ex. B, ¶ 52. Indeed, the Applicant Agreement *repeatedly*
7 emphasizes that Plaintiff's continued participation in the Program was in no way
8 promised or guaranteed. *See, e.g.,* Ex. B, ¶ 2 ("*If* I am selected by Producer to be a
9 contestant" and "my selection, *if any*, as a contestant"); *id.*, ¶ 4 ("*if* I am selected");
10 *id.*, ¶ 7 ("*if* I am selected as a contestant in the Series and *if* I actually participate in
11 the Series"); *id.*, ¶ 15 ("*if* I am selected to participate in the series") (emphases
12 added).

13      The Agreements also contain express waivers and releases of the very claims
14 Plaintiff purports to assert in his Complaint. Both the Waiver and the Applicant
15 Agreement, signed by Plaintiff and initialed by him on every page, contain the
16 following provision in bold-face, capital letters:

17      **I UNDERSTAND THIS IS AN IMPORTANT LEGAL**
18      **DOCUMENT RELATING TO MY PARTICIPATION**
19      **IN THE SERIES, AND BY SIGNING THIS**
20      **DOCUMENT I AM WAIVING LEGAL RIGHTS I**
21      **MAY HAVE AGAINST THE PRODUCER OF THE**
22      **SERIES … AND OTHERS.**

23 Ex. B at 1 (emphasis in original); Ex. A at 1. Plaintiff covenanted not to sue
24 Defendants by agreeing that,

25      **TO THE MAXIMUM EXTENT PERMITTED BY**
26      **LAW, I … HEREBY IRREVOCABLY AGREE THAT**
27      **I … WILL NOT SUE OR ASSERT ANY CLAIM**
28      **AGAINST ANY OF THE RELEASED PARTIES …**

-3-

1               **FOR OR IN CONNECTION WITH ANY INJURY,**

2               **ILLNESS, DAMAGE, LOSS OR HARM TO ME OR**

3               **MY PROPERTY ... RESULTING OR ARISING OUT**

4               **OF   OR   IN   CONNECTION   WITH   ...   MY**

5               **APPLICATION FOR THE SERIES ... .**

6 Ex. A, ¶ 12 (emphasis in original).  The Plaintiff initialed both this page and this

7 paragraph of the Waiver.  *Id.*  Substantially the same language is found in the

8 Applicant Agreement.  *See* Ex. B, ¶ 34.

9      Plaintiff also waived any claims against the Defendants by agreeing to release

10 them from all claims pertaining to the Program:

11          **I   ...   HEREBY   UNCONDITIONALLY   AND**

12          **IRREVOCABLY   RELEASE   AND   FOREVER**

13          **DISCHARGE EACH OF THE RELEASED PARTIES**

14          **FROM   ANY   AND   ALL   CLAIMS   ...   AND**

15          **LIABILITIES OF WHATEVER KIND OR NATURE**

16          **IN LAW, EQUITY, OR OTHERWISE ... ARISING**

17          **OUT   OF   OR   IN   CONNECTION   WITH   MY**

18          **PREPARATION   FOR,   PARTICIPATION   AND**

19          **APPEARANCE IN OR ELIMINATION FROM THE**

20          **[PROGRAM].**

21 Ex. A, ¶ 13.  Plaintiff initialed both this page and this paragraph of the Waiver.  *Id.*

22 Substantially similar language is found in the Applicant Agreement and the

23 Application Agreement.  Ex. B, ¶ 35.

24      Plaintiff twice agreed to a merger clause, in which he acknowledged and

25 agreed that no party or agent or attorney

26          has made any promise, representation or warranty

27          whatsoever, express or implied, not contained herein

28          concerning the subject matter hereof, to induce me to

-4-

1                  execute this document and I acknowledge that I have not

2                  executed this instrument in reliance on any such promise,

3                  representation or warranty not contained herein.

4   Ex. B, ¶ 57. Similar language is found in the Waiver in a paragraph initialed by

5   Plaintiff. Ex. A, ¶ 9.

6        Plaintiff also agreed to a choice of law provision whereby the contract would

7   be deemed entered into in Los Angeles, California and "shall be governed by and

8   interpreted in accordance with the laws of the State of California applicable to

9   agreements executed and fully carried out in California." Ex. B, ¶ 61; *see also* Ex.

10   A, ¶ 24.

11       **B.**    **Plaintiff Sues Defendants In U.S. District Court In Massachusetts**

12        Plaintiff filed an action in the United States District Court for the District of

13   Massachusetts on July 3, 2006. *See* Ex. C at 1. Shortly thereafter, on July 17, 2006,

14   Plaintiff filed an amended complaint which became the operative complaint (the

15   "Massachusetts Complaint"). Ex. D. The Massachusetts Complaint contained six

16   counts, including counts for defamation, tortious interference with an advantageous

17   relationship and breach of the covenant of good faith and fair dealing. Ex. D, ¶¶ 21-

18   24, 33-37, 42-46. The defendants named by Plaintiff were the same as the

19   Defendants in the present action: Mark Burnett Productions, Inc., Mark Burnett,

20   Trump Productions LLC and Donald Trump. Ex. D, ¶¶ 1-5.

21        Defendants filed a motion to dismiss for failure to state a claim under Rule

22   12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). Ex. C at 3. The District

23   Court granted the Motion, and dismissed the Complaint on several grounds: (1)

24   Plaintiff's claims were waived by virtue of the "valid and enforceable" releases and

25   covenants not to sue that he signed; (2) Plaintiff violated an agreement to arbitrate

26   any claims against Defendants; and (3) Plaintiff violated a forum selection

27   agreement between the parties by filing in federal court in Massachusetts. Ex. C at

28

-5-

1 | 3-4.[1] A few days later, on July 11, 2007, the Court entered judgment in favor of
2 | Defendants and against Plaintiff. Ex. F.

3       **C.**   **Plaintiff Files Another Complaint Against Defendants Alleging**
4             **Three Claims Raised And Dismissed In The Earlier Action**

5     On October 17, 2008, Plaintiff commenced the present action by filing a
6 | Complaint against the same Defendants he had sued in the Massachusetts action.
7 | The present Complaint contains three claims that also appeared in the Massachusetts
8 | Complaint – for defamation, tortious interference and breach of the covenant of
9 | good faith and fair dealing. *Compare* Complaint, ¶¶ 24-44 *with* Ex. D
10 | [Massachusetts Complaint], ¶¶ 21-24, 33-37, 42-46.[2] Each claim in the present
11 | Complaint is based on purportedly defamatory speech that occurred during the
12 | selection process in August 2003. Complaint, ¶¶ 26, 36, 42-44.

13 | **III. STANDARD FOR FRCP 12(b)(6) MOTIONS TO DISMISS IN CASES**
14 |       **INVOLVING SPEECH-RELATED ACTIVITIES**

15     A motion to dismiss under FRCP 12(b)(6), tests the legal sufficiency of the
16 | claims asserted in the complaint. *Pegasus Holdings v. Veterinary Centers of*
17 | *America, Inc.*, 38 F.Supp.2d 1158, 1159-60 (C.D. Cal. 1998). The scope of review
18 | on an FRCP 12(b)(6) motion to dismiss for failure to state a claim is generally
19 | limited to the content of the complaint. *Id.* The Court may, however, consider
20 | exhibits submitted or referenced in the complaint and matters that may be judicially
21 | noticed pursuant to Federal Rule of Evidence 201. *Id* at 1160. Indeed, "documents

22

23 |     [1] The District Court's ruling was made part of the docket, which is submitted
24 | concurrently as Exhibit C, but there was no separate document in the CM/ECF for the ruling on the Motion. *See* Ex. C.

25 |     [2] Plaintiff labels his second "count" as "tortuous [*sic*] interference with an
26 | advantageous relationship." Complaint, at 5:5. Defendants are unfamiliar with Plaintiff's verbiage, but understand Plaintiff to be asserting a claim for tortious
27 | interference with prospective economic advantage. For the purposes of this Motion, Plaintiff's exact label is not as important as his failure to state a claim for relief.
28

-6-

1  specifically referred to in a complaint, though not physically attached to the
2  pleading, may be considered where authenticity is unquestioned." *Daly v. Viacom,*
3  *Inc.*, 238 F.Supp.2d 1118, 1121-22 (N.D. Cal 2002). In this case, Plaintiff sues,
4  *inter alia*, for breach of the covenant of good faith and fair dealing, which requires
5  an underlying contract. *Smith v. City & County of San Francisco*, 225 Cal. App. 3d
6  38, 49 (1990) ("[t]he prerequisite for any action for breach of the implied covenant
7  of good faith and fair dealing is the existence of a contractual relationship between
8  the parties, since the covenant is an implied term in the contract"). Defendants
9  request judicial notice of the Agreements because, although not attached to the
10  Complaint, the Agreements are necessarily referenced or relied upon in the
11  Complaint.

12  "A complaint may be dismissed as a matter of law for one of two reasons: (1)
13  lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal
14  claim." *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).
15  Although allegations of material fact must be accepted as true, "[c]onclusory
16  allegations of law and unwarranted inferences are insufficient to defeat a motion to
17  dismiss for failure to state a claim." *In re VeriFone Sec. Litig.*, 11 F.3d 865, 868
18  (9th Cir. 1993). Leave to amend should not be granted where the complaint cannot
19  be saved. *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 991 (9th Cir. 1999).

20  "Summary disposition is *particularly favored* in cases," such as this one,
21  "involving First Amendment rights." *Baugh v. CBS, Inc.*, 828 F.Supp. 745, 752
22  (N.D. Cal. 1993) (emphasis added) (dismissing claims following defendants' motion
23  to dismiss, or for summary judgment, before discovery occurred). The California
24  Supreme Court has emphasized that "because unnecessarily protracted litigation
25  would have a chilling effect upon the exercise of First Amendment rights, speedy
26  resolution of cases involving free speech is desirable." *Winter v. DC Comics*, 30
27  Cal.4th 881, 891 (2003) (internal quotes omitted).

28

-7-

NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES

**IV.   THE COURT SHOULD DISMISS THE COMPLAINT WITH PREJUDICE PURSUANT TO FRCP 12(b)(6) BECAUSE PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

**A.   On The Face Of The Complaint, Each Claim Is Barred By The Applicable Statute Of Limitations**

In California, actions for defamation, whether for libel and slander, must be brought within one year of publication of the purportedly defamatory statement. C.C.P. § 340(c). A cause of action for defamation accrues, and the statute of limitations begins to run, when the purportedly defamatory statement is published to a party other than the plaintiff. *Shively v. Bozanich*, 31 Cal. 4th 1230, 1245-47 (2003). Claims for tortious interference with prospective economic advantage must be brought to court within two years of the alleged interference. C.C.P. § 339(1); *see also Knoell v. Petrovich*, 76 Cal. App. 4th 164, 168 (1999) (statute of limitations for interference with prospective business advantage is two years). The statute of limitations for the breach of the implied covenant and fair dealing founded on a written contract is four years from the alleged breach. C.C.P. § 337(1); *see also Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 220-221 (1991).

Plaintiff's claims are all time-barred. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (claims may be barred by statute of limitations, raised on motion to dismiss under FCRP 12(b)(6), where running of the statute is apparent on the face of the complaint). Plaintiff alleges that he was defamed in "August 2003." Complaint, ¶ 26. On the face of the Complaint, the alleged defamation occurred far more than one year before the Complaint was filed on October 17, 2008. The defamation claim is therefore barred by the applicable statute of limitations, C.C.P. § 340(c).

According to Plaintiff, the purported defamation in August 2003 also serves as the foundation for his claim for tortious interference with an "advantageous

business relationship," as well as his claim for breach of the implied covenant of good faith and fair dealing. Complaint, ¶¶ 36, 42-44. Plaintiff's interference claim expired after two years, in August 2005, so it, too, is time-barred. *See Knoell*, 76 Cal. App. 4th at 168.[3]  The breach of the implied covenant of good faith and fair dealing claim was barred by the time the present Complaint was filed on October 17, 2008. Even if Plaintiff could demonstrate that his prior breach of the implied covenant claim was tolled between the filing of the Massachusetts Complaint (on July 3, 2006) and the judgment dismissing that Complaint (on July 12, 2007), Plaintiff's present implied covenant claim was still filed 38 days too late.[4]

## B. Each Claim Also Is Barred By The Doctrine Of *Res Judicata* Or Claim Preclusion

*Res judicata* may be raised on a motion to dismiss under FRCP 12(b)(6) if the defendant does not raise disputed issues of fact. *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). "Res judicata, or claim preclusion, bars claims that should have been raised and resolved in earlier litigation between the same parties. Generally, a claim is barred under this doctrine if the earlier litigation: (1) concerned the same claim as the current action, (2) reached final judgment on the merits, and (3) involved the same parties." *Communications Telesystems Intern. v. California*

---

[3] Thus, the defamation claim and tortious interference claims, which are both based on purportedly defamatory remarks made in "August 2003," Complaint, ¶¶ 26, 36, were time-barred before even the Massachusetts Complaint was filed on July 3, 2006.

[4] Assuming *arguendo* that Plaintiff's claim for breach of the covenant of good faith and fair dealing in the Massachusetts Complaint was tolled, then the statute ran for just under three years – 2 years and 306 days – from the end of "August 2003" until July 3, 2006, when the Massachusetts action was filed, leaving Plaintiff 1 year and 59 days after the Massachusetts action was dismissed with a judgment on July 11, 2007.  The span between the dismissal in Massachusetts and the refiling in California totaled 1 year and 97 days, making his present claim for breach of the implied covenant of good faith and fair dealing 38 days too late (2 years and 306 days + 1 year and 97 days = 4 years and 38 days – *i.e.*, 38 days past the four-year statute of limitations, *see Krieger*, 234 Cal. App. 3d at 220-221).

NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

1 *Public Utility Comm'n*, 196 F.3d 1011, 1017 (9th Cir. 1999). Applying these
2 elements to the facts of this case, it is clear that each of Plaintiff's claims is barred
3 by the doctrine of *res judicata* or claim preclusion.

4       Plaintiff's claims in the present Complaint are the same as those in the
5 Massachusetts Complaint. In each Complaint, Plaintiff sued Defendants for
6 defamation, tortious interference and breach of the covenant of good faith and fair
7 dealing. *Compare* Complaint, ¶¶ 24-44 *with* Ex. D [Massachusetts Complaint], ¶¶
8 ¶¶ 21-24, 33-37, 42-46. The claims are virtually indistinguishable, even using
9 identical language in some places. Even if Plaintiff could articulate differences
10 between the claims in each Complaint – which Defendants do not concede is
11 possible – such differences would not be material to this Court's *res judicata*
12 analysis. The doctrine "prohibits lawsuits on 'any claims that were raised or *could
13 have been raised*' in a prior action." *Stewart v. U.S. Bancrop*, 297 F.3d 953, 956
14 (9th Cir. 2002) (emphasis in original); *see also Clark v. Bear Stearns & Co., Inc.*,
15 966 F.2d 1318, 1320 (9th Cir. 1992) ("res judicata bars all grounds for recovery
16 which could have been asserted, whether they were or not, in a prior suit between
17 the same parties on the same cause of action"). According to the present Complaint,
18 all of the acts allegedly giving rise to Plaintiff's claims occurred in August 2003,
19 nearly three years before the Massachusetts Complaint was filed. Such claims either
20 were raised *or could have been raised* in the Massachusetts Complaint and are
21 barred today.

22       Unless an order or judgment expressly provides otherwise, an involuntary
23 dismissal on nonjurisdictional grounds is an "adjudication upon the merits." Fed. R.
24 Civ. Proc. 41(b); *see also Stewart*, 297 F.3d at 956. A dismissal for failure to state a
25 claim, under FRCP 12(b)(6), is a judgment on the merits. *Stewart*, 297 F.3d at 957.
26 The District Court in Massachusetts granted Defendants' motion to dismiss and
27 entered judgment on several grounds, including that Plaintiff had waived and
28 released all of his claims, holding: "As part of the agreement by which the plaintiff

-10-

1 | became a contestant for participation in the defendants' prize-based reality
2 | television program, the plaintiff executed a document by which he waived his right
3 | to sue, and agreed not to sue, the defendants for claims of the kind asserted in the
4 | complaint. The waiver and covenant not to sue provisions are valid and enforceable
5 | and preclude the claims made here." Ex. C at 3-4.

6 |     The same parties are involved in this suit as in the Massachusetts suit.
7 | *Compare* Complaint, ¶¶ 1-5 *with* Ex. D [Massachusetts Complaint], ¶¶ 1-5. Plaintiff
8 | sued all of the same Defendants in each action, and Plaintiff's Massachusetts
9 | Complaint as to all of the same Defendants was dismissed by the District Court in
10 | Massachusetts. Ex. C.

11 |     All of the elements of *res judicata* are satisfied as to each claim. Thus, each
12 | claim should be dismissed with prejudice.

13 |     **C.    All Of Plaintiff's Claims Have Been Waived**

14 |     In addition to being barred by the statute of limitations and the doctrine of *res*
15 | *judicata*, Plaintiff repeatedly waived all of his claims in signed releases. *See* Ex. A,
16 | ¶¶ 12, 13; Ex. B, ¶¶ 34-35.

17 |     "'[A] release need not achieve perfection'" in order to be effective. *Paralift,*
18 | *Inc. v. Superior Ct.*, 23 Cal. App. 4th 748, 755 (1993). "For it to be valid and
19 | enforceable," a release "must be clear, unambiguous and explicit in expressing the
20 | intent of the parties." *Id.* (internal quotation marks omitted). In *Paralift*, the Court
21 | held in a wrongful death action that a skydiver's release from liability was valid
22 | even though the release was signed three years prior to the skydiver's fatal jump and
23 | was not specific to the circumstances of that jump. California courts will generally
24 | enforce waivers and releases so long as the release is made conspicuous with the use
25 | of bold face, font size, headings, or separate paragraphs. *See, e.g., Leon v. Family*
26 | *Fitness Ctr. (#107)*, 61 Cal. App. 4th 1227, 1233 (1988) (finding those factors
27 | lacking).

28 |

-11-

1      Here, the waiver and release clauses, as well as the covenants not to sue, in
2   the Waiver and Applicant Agreement are in all capital letters, are in bold face, are
3   set apart in their own paragraphs, and are initialed on each page by the Plaintiff. *See*
4   Ex. A, ¶¶ 12, 13; Ex. B, ¶¶ 34-35. Additionally, each release paragraph in the
5   Waiver is separately initialed by the Plaintiff. Ex. A, ¶¶ 12, 13. For example, the
6   Waiver clearly, unambiguously, explicitly, "unconditionally and irrevocably
7   release[d] and forever discharge[d]" Defendants from "any and all claims … arising
8   out of or in connection with [Plaintiff's] preparation for, participation and
9   appearance in or elimination from the Series … including without limitation claims
10   for any injury … damage, loss or harm to [Plaintiff] … or [his] property," which
11   included without limitation claims for "breach of contract, breach of any statutory or
12   other duty of care owed under applicable laws, libel, slander [and] defamation." Ex.
13   A, ¶ 13 (bold and all capital letters removed). Also, in a separate paragraph, in all
14   bolded capital letters on an initialed page, Plaintiff acknowledged that he was "given
15   ample opportunity to read," and he did "carefully read" the "entire" Waiver, and he
16   further acknowledged that he was "aware" that the Waiver is, "among other things,
17   a release of liability for future injuries[.]" Ex. A, ¶ 27. The District Court in
18   Massachusetts found that the waivers and covenants not to sue were "valid and
19   enforceable" to bar Plaintiff's claims. Ex. C at 4. This Court should come to the
20   same conclusion, and dismiss the claims with prejudice for this additional reason.

21      **D.      Plaintiff States No Facts That Could Support A Claim Against The**
22              **Trump Defendants**

23      This Court should dismiss Plaintiff's Complaint as against the Trump
24   Defendants for the additional reason that, "'it is clear that no relief could be granted
25   under any set of facts that could be proved consistent with the allegations.'"
26   *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 922, 152 L.Ed.2d 1
27   (2002). Plaintiff fails to identify any culpable act or omission by defendants
28   Donald Trump or Trump Productions LLC ("Trump Productions"). For example,

-12-

1  Plaintiff makes no allegation that Trump or Trump Productions said *anything* about
2  Plaintiff. A defamation claim requires pleading and proof that the defendant made
3  statements about the plaintiff. Civ. C. §§ 45, 46; *Lundquist v. Reusser*, 7 Cal. 4th
4  1193, 1203 (1994) (publication must be to at least one other person other than the
5  one allegedly defamed).

6  Instead, Plaintiff concedes in the Complaint that the Trump Defendants "were
7  not at the final casting" in August 2003 when the allegedly injurious remarks giving
8  rise to each of Plaintiff's claims purportedly were uttered. Complaint, ¶ 16; *see also*
9  Complaint, ¶¶ 36, 40-42. Thus, according to Plaintiff's Complaint, the Trump
10 Defendants were not present when the alleged harms occurred, and all of the claims
11 against the Trump Defendants should be dismissed.

12     **E.     Each Claim Fails For Additional And Independent Reasons**

13          **1.     Plaintiff Fails To State A Claim For Defamation Because The**
14                  **Purportedly Defamatory Language Is Nonactionable**
15                  **Opinion, Which Cannot Support A Defamation Claim**

16     Plaintiff does not identify the exact words that constitute the alleged
17 defamation; instead, Plaintiff vaguely alleges that an unspecified "Defendant" made
18 "disparaging and defamatory oral statements about Plaintiff," Complaint, ¶ 28,
19 supposedly "*amounting to* Plaintiff being not credible and unreliable, a bad risk and
20 a high liability, as well as alleging Plaintiff's general incompetence," *id.*, ¶ 29
21 (emphasis added).[5] Even if one of the Defendants actually had said that Plaintiff

22

23          [5] Plaintiff's allegation that an unspecified "Defendant" made statements
24 "amounting to" a particular affect are not sufficiently specific. A complaint for libel
   or slander must plead the exact words constituting the alleged defamation. *Des*
25 *Grages v. Crall*, 27 Cal. App. 313, 314-15 (1915) (affirming demurrer where
   plaintiff made only general allegations and failed to identify specific defamatory
26 language). As the Ninth Circuit has held, no matter what label a plaintiff gives to a
   claim, "where a plaintiff seeks damages or injunctive relief, or both, for conduct
27 which is prima facie protected by the First Amendment, the danger that the mere
28 pendency of the action will chill the exercise of First Amendment rights requires

1   was not credible, unreliable or incompetent, such statements, taken in the context of
2   an audition for "The Apprentice," are non-actionable opinion rather than provable
3   assertions of fact.

4           The First Amendment limits libel plaintiffs to complaints about defamatory
5   facts. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20, 110 S. Ct. 2695, 111 L. Ed.
6   2d 1 (1990). Statements that "cannot 'reasonably [be] interpreted as stating actual
7   facts about an individual" are not actionable. *Id.* at 20 (quoting *Hustler Magazine,*
8   *Inc. v. Falwell*, 485 U.S. 46, 50, 108 S. Ct. 876, 99 L. Ed. 2d 41 (1988). Rhetoric,
9   hyperbole, figurative language, and subjective impressions all are constitutionally
10  protected. *Greenbelt Publ. Assn. v. Bresler*, 398 U.S. 6, 14, 90 S. Ct. 1537, 26 L. Ed.
11  2d 6 (1970).

12          To determine whether a statement implies a factual assertion or merely
13  conveys a subjective opinion, the Ninth Circuit employs a three-part test.
14  *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995); *see also*
15  *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1121 (C.D. Cal.), *aff'd*, 210
16  F.3d 1036 (9th Cir. 2000). First, the court must examine the statements or
17  implications in their "broad context, which includes the general tenor of the entire
18  work, the subject of the statements, the setting, and the format of the work."
19  *Underwager*, 69 F.3d at 366. Second, the court must examine the "specific context
20  and content of the statements, analyzing the extent of figurative or hyperbolic
21  language used and the reasonable expectations of the audience in that particular
22  situation." *Id.* Third, the court must examine "whether the statement itself is
23  sufficiently factual to be susceptible of being proved true or false." *Id.* Under this
24  strict constitutional test, Plaintiff's defamation claim is barred.

25

26  more specific allegations than would otherwise be required." *Franchise Realty*
27  *Interstate Corp. v. San Francisco Local Jt. Executive Bd. of Culinary Workers*, 542
    F.2d 1076, 1082-83 (9th Cir. 1976).
28

-14-

1    The broad context militates strongly in favor a finding that the allegedly
2  defamatory statements were nonactionable opinion. The statements allegedly were
3  made about Plaintiff while he was a candidate auditioning to participate in "The
4  Apprentice." Complaint, ¶¶ 19-20, 26-28. As Plaintiff acknowledges, the entire
5  point of the process was for the producers to evaluate and judge the applicants.
6  Complaint, ¶¶ 11, 14, 17-18. Plaintiff necessarily understood that 34 people would
7  not be chosen for the program, even if Plaintiff and every other finalist were
8  completely qualified. Indeed, the Applicant Agreement clearly provides that:
9  "Producer is not obligated to select me, even if I meet all eligibility requirements
10  and all criteria for selection. Producer's decision regarding the selection of
11  contestants is final and not subject to challenge or appeal." Ex. B, ¶ 52. The
12  process, by definition, required the producers to render opinions about the
13  candidates, including Plaintiff.

14    The Ninth Circuit's second part of the test for opinion – the specific context –
15  also weighs in favor of a finding that the purported statements are protected opinion.
16  "Loose, figurative [and] hyperbolic" language supports the conclusion that a
17  statement is protected opinion. *Milkovich*, 497 U.S. at 21. Courts must look at the
18  language to discern whether the specific context for the publication is figurative or
19  hyperbolic, and courts will look to the "reasonable expectations of the audience in
20  that particular situation." *Underwager*, 69 F.3d at 366-367. Here, Plaintiff was
21  necessarily being compared to other applicants for "The Apprentice." According to
22  Plaintiff's allegations, the audience for the purportedly defamatory remarks
23  consisted of "people who were directly or indirectly related to the production of the
24  Apprentice." Complaint, ¶ 26. In that context, the audience would have reasonably
25  expected to hear loose, figurative and hyperbolic language about the various
26  applicants undergoing interviews and tests while competing for a slot on the
27  Program. In other words, the audience would have been braced to hear opinions in
28  colorful terms about who should and should not be on the show and why.

-15-

1          The third prong in the Ninth Circuit's test – whether the statement can be
2  proven true or false – also weighs in favor of a finding that the allegedly actionable
3  language was constitutionally protected opinion. Plaintiff does not identify the
4  specific words supposedly uttered about him, but even if, as Plaintiff alleges, they
5  amount to assertions that he was not credible, not reliable and incompetent, the
6  statements, when taken in context, are not capable of being proven true or false. .
7  Complaint, ¶ 26.

8          A statement that someone is "not credible" or, to go a step further than even
9  Plaintiff alleged here, that someone is a *liar* is not actionable. In *Underwager*, the
10  defendant ***directly*** accused the plaintiff of "lying" to a court, but the Ninth Circuit,
11  held that the plaintiff "failed to show that the statement implie[d] a verifiable
12  assertion of perjury." *Underwager,* 69 F.3d at 367. Thus, *even where a direct*
13  *assertion was made that the plaintiff had lied*, the Ninth Circuit found no
14  defamatory meaning, noting that "the term 'lying' applies to a spectrum of untruths
15  including 'white lies,' 'partial truths,' 'misinterpretation,' and 'deception.'" Id. *See*
16  *also Standing Committee on Discipline of the U.S. Dist. Ct. for the Central Dist. of*
17  *Calif. v. Yagman*, 55 F.3d 1430, 1440-41 (9th Cir. 1995) (*Yagman*) (refusing to
18  discipline an attorney for stating, among other things, that a district judge was
19  "dishonest"). Similarly, in *Cochran*, the Ninth Circuit affirmed a trial court's order
20  granting a Rule 12(b)(6) motion, holding that it was not actionable to state that
21  noted trial attorney Johnnie Cochran would "say or do just about anything to win,
22  typically at the expense of the truth." 210 F.3d at 1038. Although Cochran claimed
23  that the statement implied that he was unethical and a liar, the Central District Court
24  (Wardlaw, J.) found that the statement and any alleged implications arising from it
25  were nonactionable expressions of opinion, and not provable statements of fact. 58
26  F. Supp. 2d at 1125-6, *aff'd*, 210 F.3d 1036 (adopting Judge Wardlaw's opinion and
27
28

-16-

1  analysis).[6]  Even greater deference to speech must be given where, as here, there is
2  not even a direct accusation of lying, but simply Plaintiff's vague allegation that
3  someone said he was "not credible."  Complaint, ¶ 29.

4       The purported statements that Plaintiff is not reliable, a "high risk," a "high
5  liability" and incompetent are also rhetorical hyperbole or opinion when taken in the
6  context of applying to participate in "The Apprentice."  In *Lieberman v. Fieger*, 338
7  F.3d 1076, 1080 (9th Cir. 2003), the Ninth Circuit held that a lawyer's statements
8  about a psychiatrist, calling the psychiatrist "Looney Tunes," "crazy," "nuts" and
9  "mentally imbalanced," were not verifiable statements of fact, but were instead
10 constitutionally protected opinions.  Similarly, the Ninth Circuit held in
11 *Underwager* that calling someone, with whom you strongly disagree, "intrinsically
12 evil" also is "not capable of verification" and cannot support a defamation claim.
13 69 F.3d at 367.  In *Yagman*, 55 F.3d at 1440, the Ninth Circuit held that, despite
14 assertions that an attorney's description of a federal judge as a "sub-standard
15 human" was tantamount to an accusation of "criminal misconduct," such an epithet,
16 and other similar ones, were constitutionally protected.  Courts in California
17 likewise reject even the most biting epithets as nonactionable opinion and/or
18 hyperbole.  For example, accusing someone of engaging in "immoral behavior" is
19 "incapable of being interpreted as implying a *provably false* assertion of *fact*"
20 because immorality is an "amorphous" concept and "within the range of statements
21 of opinion that are not actionable."  *McGarry v. University of San Diego*, 154 Cal.

23      [6] These holdings are consistent with decisions from California courts.  For
24 example, in *Morningstar, Inc. v. Superior Court*, 23 Cal. App. 4th 676, 690 (1994),
the California Court of Appeal held that the phrase "Lies, Damned Lies and Fund
Advertisements," when used as a headline to describe mutual fund advertisements,
25 was non-actionable opinion. *See also Copp v. Paxton*, 45 Cal. App. 4th 829, 837-39
26 (1996) (court found assertion that "keep[ing]" plaintiff "honest" is "quite a
challenge" was nonactionable opinion); *Rosenaur v. Scherer*, 88 Cal. App. 4th 260,
27 280 (2001) (defendant's reference to his political rival as a "liar" and a "thief" was
nonactionable opinion).

-17-

1 App. 4th 97, 116-117 (2007) (emphasis in original) (affirming granting of anti-
2 SLAPP motion). If the stinging epithets in *Lieberman, Underwager, Yagman* and
3 *McGarry* are constitutionally protected opinion, then the Burnett Defendants'
4 purported comments about Plaintiff's credibility and competence, particularly when
5 taken in the broad and specific context of this case, must also be protected.

6     **2.   Plaintiff's Second And Third Claims Fail Because Plaintiff**
7            **Cannot Evade The Constitutional Limitations On His**
8            **Defamation Claim By Pleading Another Claim Which Is**
9            **Based On A Purportedly Injurious Falsehood**

10     Plaintiff cannot avoid the limitations on a defamation claim by creatively
11 pleading other claims. *See, e.g., Hustler Magazine*, 485 U.S. at 50 (portrayal of
12 plaintiff as having engaged in incestuous relationship with mother in outhouse is
13 entitled to protection against a defamation claim, and also is not actionable under
14 rubric of intentional infliction of emotional distress). Similarly, the California
15 Supreme Court recognizes that "the limitations that define the First Amendment's
16 zone of protection … apply to all claims whose gravamen is the alleged injurious
17 falsehood of a statement." *Blatty v. New York Times Co.*, 42 Cal.3d 1033, 1042-43
18 (1986); *see also Hofmann Co. v. E.I. DuPont de Nemours & Co.*, 202 Cal.App.3d
19 390, 403 (1988) (despite label of intentional interference with economic advantage,
20 any claim where the gravamen is an alleged injurious falsehood must satisfy the
21 requirements of the First Amendment).

22     Plaintiff's second claim for tortious interference is based on a purported
23 "systematic engagement in defamation" in August 2003, Complaint, ¶¶ 36-37, and
24 his third claim for breach of the implied covenant of good faith and fair dealing is
25 based on the same alleged "slander campaign," *id.*, ¶ 42. Plaintiff's three claims are
26 all based on the same allegedly injurious falsehoods, and they are all therefore
27 subject to the same limitations as the defamation claim. Because the defamation
28 claim fails, these claims must also fail.

-18-

**3.    Plaintiff Fails To State A Claim For Tortious Interference**

Plaintiff's tortious interference claim fails for three additional reasons. <u>First</u>, Plaintiff alleges no actionable, independently wrongful act. A plaintiff claiming interference must plead and prove that the defendant interfered with his business by some independently wrongful act – *i.e.*, "that the defendant's interference was wrongful 'by some measure beyond the fact of the interference itself.'" *Della Penna v. Toyota Motor Sales U.S.A., Inc.*, 11 Cal.4th 376, 393 (1995) (citations omitted). Here, the basis for the purported tortious interference was allegedly defamatory speech. Complaint, ¶ 36. For the reasons set forth above, Plaintiff's defamation claim fails because the purported speech at issue was not actionable.

<u>Second</u>, Plaintiff's claim is, at least in part, not against a third party. Tortious interference is available only against a third party. *See, e.g., Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153-54 (2003); *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 55 (1998). Such claims cannot be asserted against Defendants, who were either party to a contract with Plaintiff or an integral part of the putative advantageous relationship. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (1994). To the extent Plaintiff alleges interference with his relationship with "the relevant staff of the Defendant," Complaint, ¶ 36, Plaintiff's tortious interference claim is barred.

<u>Third</u>, an interference claim requires the pleading and proof of an economic relationship with the ***probability*** of future economic benefit for the plaintiff. A mere possibility is not sufficient; the law requires a reasonable certainty of obtaining economic benefit from the relationship. *Della Penna*, 11 Cal.4th at 380 n.1; *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F.Supp. 1303, 1312 (N.D. Cal. 1997) (applying California law). Plaintiff does not plead that he had a probability of future economic benefit. Instead, he merely and vaguely alleges that he "engaged in business negotiations" and formed nondescript "relationships." Complaint, ¶¶ 20, 36.

1

2

## 4. Plaintiff's Claim For Breach Of The Covenant Of Good Faith And Fair Dealing Must Fail

3 "The prerequisite for any action for breach of the implied covenant of good
4 faith and fair dealing is the existence of a contractual relationship between the
5 parties, since the covenant is an implied term in the contract." *Smith v. City &*
6 *County of San Francisco*, 225 Cal. App. 3d 38, 49 (1990). The implied covenant of
7 good faith and fair dealing cannot be extended beyond the express terms of the
8 contract. *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 690 (1988) ("[t]he
9 covenant of good faith is read into contracts in order to protect the express
10 covenants or promises of the contract, not to protect some general public policy
11 interest not directly tied to the contract's purposes"); *Racine & Laramie v. Dep't of*
12 *Parks & Recreation*, 11 Cal. App. 4th 1026, 1032 (1992) ("the implied covenant is
13 limited to assuring compliance with the express terms of the contract, and cannot be
14 extended to create obligations not contemplated in the contract").

15 Promises may be implied only if absolutely necessary, clearly within the
16 intent of the parties, and not completely covered by the contract. *Third Story Music,*
17 *Inc. v. Waits*, 41 Cal. App. 4th 798, 804 (1995) (citation, internal quotes omitted).
18 The covenant "cannot impose substantive duties or limits on the contracting parties
19 beyond those incorporated in the specific terms of the agreement." *Guz v. Bechtel*
20 *Nat'l, Inc.*, 24 Cal.4th 317, 349 (2000). For example, in an at-will employment
21 relationship "there is no agreement to terminate only for good cause" and "the
22 implied covenant standing alone cannot be read to impose such a duty." *Agosta v.*
23 *Astor*, 120 Cal. App. 4th 596, 607-08 (2004).

24 Here, the Agreements merely provided Plaintiff an opportunity to apply to
25 become a contestant on the Program, and repeatedly stated that "Producer is not
26 obligated to select" Plaintiff. *See, e.g.,* Ex. B, ¶ 52. By his allegations and his
27 signature on the agreements, Plaintiff received exactly what he bargained for – an
28 opportunity to be a contestant on the Program. The covenant of good faith and fair

-20-

1  dealing cannot impose upon the Producers an obligation to select Plaintiff or to
2  speak about him or treat him in a particular way during the selection process where
3  the Agreements do not create – but rather they disclaim – any such obligation.

4  **V.    THE COURT ALSO SHOULD DISMISS THE COMPLAINT AS TO**
5  **THE BURNETT DEFENDANTS BECAUSE PLAINTIFF HAS NOT**
6  **SERVED THEM WITH THE SUMMONS AND COMPLAINT**

7  A plaintiff has 120 days from the filing of a complaint to serve the defendants.
8  FRCP 4(m). If the plaintiff does not meet that deadline, the Court may dismiss the
9  Complaint. *Id.* It has been more than 120 days since Plaintiff filed his Complaint
10 on October 17, 2008, and Plaintiff still has not served his Complaint on the Burnett
11 Defendants. The Complaint should be dismissed as to the Burnett Defendants for
12 this additional reason.

13 **VI.   CONCLUSION**

14 The Complaint, and each cause of action therein, should be dismissed with
15 prejudice and without leave to amend on the grounds that each claim is barred by
16 the applicable statute of limitations and the doctrines of *res judicata* and waiver.
17 The defamation claim, moreover, must fail because it is predicated on nonactionable
18 opinion. The tortious interference and good faith and fair dealing claims must fail
19 because they are predicated on the defective defamation claim. If the Court grants
20 the Motion on any one of the foregoing bases, then it need not reach the other
21 grounds for dismissal raised by this Motion, although each provides this Court with
22 additional, separate and independent reasons to dismiss the Complaint.

23 Dated:      February 19, 2009            BOSTWICK & JASSY LLP
24
25                                         By _____
26                                             Jean-Paul Jassy
27                                             Counsel for Defendants
28

-21-

1    <u>PROOF OF SERVICE</u>

2    <u>STATE OF CALIFORNIA, COUNTY OF LOS ANGELES</u>

3           I am employed in the County of Los Angeles; I am over the age of eighteen
     years and not a party to the within entitled action; my business address is Bostwick &
4    Jassy LLP, 12400 Wilshire Blvd., Suite 400, Los Angeles, California, 90025.

5           On **February 19, 2009,** I served the following document(s) described as

6           **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
             COMPLAINT AND EACH CLAIM THEREIN; SUPPORTING
7            MEMORANDUM OF POINTS AND AUTHORITIES**

8           on the interested party(ies) in this action by placing true copies thereof enclosed in
9    sealed envelopes and/or packages addressed as follows:

10          **Nicholas G. Christakis**
            **4 Vasa Street**
11          **Billerica, MA 01862**
            **Tel: (978) 767-5689**
12

13

14      **BY OVERNIGHT DELIVERY:**  I served such envelope or package to be
         delivered on the same day to an authorized courier or driver authorized by the
15       overnight service carrier to receive documents, in an envelope or package
         designated by the overnight service carrier.

16   ☐   **STATE:**  I declare under penalty of perjury under the laws of the State of
         California that the foregoing is true and correct.
17

18   ☒   **FEDERAL:**  I declare that I am employed in the office of a member of the bar of
         this Court at whose direction the service was made.  I declare under penalty of
19       perjury under the laws of the United States of America that the foregoing is true and
         correct.

20          Executed on **February 19, 2009**, at Los Angeles, California.

21

22   

23

24

25

26

27

28